Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | P. Michael Mahoney | Sitting Judge if Other than Assigned Judge | Marvin E. Aspen |
|---|---|---|---|
| **CASE NUMBER** | 00 C 50343 | **DATE** | 8/9/2001 |
| **CASE TITLE** | STEVENSON vs. MASSANARI | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)    ☐ General Rule 21    ☐ FRCP41(a)(1)    ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated in the attached order, this Court grants Defendant's Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment is denied. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | AUG 9 2001 | |
| | Notified counsel by telephone. | date docketed | 20 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 8/9/2001 | |
| | | date mailed notice | |
| tml | courtroom deputy's initials | gg | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

DOCKETE
AUG -9 20
FILED-WD
AUG -9 AM 10:52
U.S. DISTRICT CLERK
COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| JESSICA STEVENSON,<br>Plaintiff, | Case No. 00 C 50343 |
| v. | Magistrate Judge<br>P. Michael Mahoney |
| LARRY G. MASSANARI,<br>ACTING COMMISSIONER OF<br>SOCIAL SECURITY<br>Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jessica Stevenson, seeks judicial review of the final decision of the Commissioner of the Social Security Administration (Commissioner). See 42 U.S.C. §§405(g), 1383(c)(3). The Commissioner's final decision denied Plaintiff's application for Disability Insurance Benefits (DIB) when she turned 18 years-old or Social Security Income (SSI) pursuant to Title XVI of the Social Security Act (the Act). 42 U.S.C. §§416(i), 423(d) and 1382(c). This matter is before Magistrate Judge pursuant to consents filed by both parties on December 15, 2000.

### I. BACKGROUND

Plaintiff was found to be disabled in June of 1990 when she was an eleven year old child. On July 8, 1997, Plaintiff received a cessation notice which stated she was no longer qualified for SSI. (Tr. 49-52). Accordingly, on July 11, 1997, Plaintiff filed a request for reconsideration by an Administration Law Judge (ALJ). Plaintiff appeared, with counsel and testified before an ALJ on November 17, 1998. (217-238). The ALJ found Plaintiff was no longer disabled and denied

1

Plaintiff's SSI benefits on January 28, 2000. (Tr. 10-16). Plaintiff then requested a review of the hearing decision on February 9, 2000. (Tr. 5). The Appeals Council denied Plaintiff's request on August 23, 2000. (Tr.3-4).

## II  FACTS

Plaintiff was born on March 6, 1979, and turned 18 years-old on March 6, 1997. (Tr. 26, 227). Plaintiff had received SSI benefits since the age of eleven. Her SSI benefits were terminated upon the attainment of age 18. She has no work experience. The Hearing Officer's report indicates that Plaintiff uses public transportation, cares for her son, and roller skates occasionally. (Tr. 84). The report also noted that her mother believes that Plaintiff "could be independent if she was employed as a packer." (Tr. 86). In Plaintiff's Disability Report -Adult application, Plaintiff reported that she takes care of her personal hygiene, she cleans around the house, and that she is learning how to use a checkbook in order to pay her bills. (Tr. 136, 137). Plaintiff was twenty years-old at the time of the hearing and testified that she was currently residing with her mother and her three year-old son. (Tr. 226). Plaintiff claimed that sometime around March 25, 1997, she and her son moved into her own apartment. (Tr. 227). She further claimed that she paid the rent with her SSI benefits, but had to move back home with her mother when the benefits ceased. (Tr. 228). Plaintiff stated that she was currently attending a program at Black Hawk Adult Education, Monday through Friday from, 8:30 a.m. to 12:30 p.m., in pursuit of a GED or diploma. (Tr. 224, 225). She also testified that, sometime last year, she did not pass the written part of the driver's test and was unable to obtain a driver's license. (Tr. 233). When questioned about her vision, Plaintiff testified that she had not seen any doctors to determine if she needed glasses. (Tr. 234). Plaintiff testified that when reading the Bible in church, she reads along, but she does not know how to read or pronounce

2

some of the words. (Tr. 236). Plaintiff also testified that she does recognize and understand the word God. (Tr. 236).

Plaintiff's sister, Martina Butterworth, also testified. When asked if she was aware of any problems with Plaintiff, Mrs. Butterworth testified that Plaintiff "squints a lot and it seems like she can't see far away." (Tr. 234). Mrs. Butterworth further stated that "she thinks (Plaintiff) sees fine." (Tr. 234). Mrs. Butterworth claimed that the problem is Plaintiff's perception. That is, "when it comes in through her eyes to her brain". (Tr. 235). Mrs. Butterworth explained that when Plaintiff sees something, "she does not see it for what it really is until seeing it for five minutes." (Tr. 235).

Mr. Frank Mendrick, a vocational expert, was contacted regarding the availability of jobs for an individual of Plaintiff's description. The ALJ asked Mr. Mendrick, via written interrogatory, about the availability of jobs for an individual of Plaintiff's age, with no work history, job skills or GED degree; who completed 9 ½ years of special education for the learning disabled; who quit as the result of a pregnancy; who received disability benefits as a child; who has been found to have a borderline intelligence in May 1997, including a verbal I.Q. of 75, a Performance IQ of 68, and a full Scale I.Q. of 71; who has no history of deficits in adaptive behavior, who is not dyslexic; who has no severe physical impairments; who takes no prescription medications; who relates well socially and is neat and appropriately groomed; who cares for her own son, watches television and is marginally literate with significant limitations in her ability to read and write; who does not have a driver's license but is capable of using public transportation; who is capable of understanding, remembering and carrying out simple tasks; and who has the residual functional capacity for performing an unlimited range of exertional work. (Tr. 193).

3

Mr. Mendrick's response to the ALJ's hypothetical question was as follows. For the six county Chicago area, plus Boone and Winnebago Counties, a total of 75, 200 GED 111 level jobs are available: sedentary-3,2000; light-35,000 and; medium-37,000. The VE noted that GED 111 jobs are assembler, optical goods, partition assembler, containers, box benders, and paper goods. (Tr. 200).

### III.  **MEDICAL HISTORY**

When Plaintiff was eleven years-old, a psychiatric review was performed on her by Thomas S. Eliseo, Ph.D on May 14, 1990. (Tr. 169-170). Upon evaluation, Plaintiff received a Full Scale score of 66 on the Wechsler Intelligence Scale for Children with a Verbal score of 67 and Performance score of 69. (Tr. 169). Dr. Eliseo reported that Plaintiff's fund of information was poor, she was "concrete in her general thought processes" and had difficulty with learning arithmetic. (Tr. 169-170). Plaintiff was able to learn but was "extremely slow" in doing so. (Tr. 170). Dr. Elsieo further noted that Plaintiff's academic achievement was consistent with her generally low intellectual functioning, thus Plaintiff demonstrated signs of "mild mental retardation." (Tr. 170). Dr. Elsieo also suggested that Plaintiff would perform more poorly on various tests as she got older. (Tr. 170).

On May 28, 1997, when Plaintiff was 18 years-old, she was evaluated by Harold F. Best, Ph.D., a clinical psychologist. (Tr. 172-173). The evaluation report indicates Plaintiff's Full IQ was 71 with a Verbal IQ of 75 and a Performance IQ of 68. (Tr. 172). Plaintiff was diagnosed with Borderline Intellectual Functioning. (Tr. 173). Dr. Best noted that Plaintiff was alert and attentive, exhibited normal behavior, and was appropriately groomed. (Tr. 172-173).

On May 5, 1998, Plaintiff was evaluated by Roosevelt Academy. (Tr. 186). The assessment

4

indicates that Plaintiff's academic skills are equivalent to a 3.3 grade level. (Tr. 186).

**Mental Residual Functional Capacity Assessment**

The most recent mental residual function capacity (RFC) performed on Plaintiff was on September 17, 1997, by Jerrold Heinrich, Ph.D. (Tr. 55-58). Dr. Heinrich reported that Plaintiff has moderate limitations in the ability to understand and remember detailed instructions. (Tr. 55). He further noted that Plaintiff has moderate limitations in carrying out detailed instructions and maintaining attention and concentration for extended periods. (Tr. 55-56). Plaintiff presented no evidence of limitation as to the ability to ask simple questions or request assistance. (Tr. 56). Dr. Heinrich found that Plaintiff was "currently functioning mentally at a borderline level" and that her "basic adaptive behavior is intact." (Tr. 57). He reported that Plaintiff "has the mental capacity and behavioral skills necessary to do two to four step tasks." (Tr. 57). He further suggested that Plaintiff needed a routine and repetitive work setting without frequent changes in routine. (Tr. 57). Dr. Heinrich also performed a psychiatric review on Plaintiff on September 17, 1997. (Tr. 59-67). Dr. Heinrich noted that Plaintiff demonstrated evidence of "Borderline Intelligence." (Tr. 63). The assessment further indicates that Plaintiff presented only a slight degree of limitation in daily living activities and in maintaining social functioning. (Tr. 66).

A mental RFC was performed on Plaintiff on June 17, 1997, by Dr. Donald MacLean, PhD. (Tr. 36-39). The assessment indicated that Plaintiff was not significantly limited in the following areas: the ability to remember locations and work-like procedures; the ability to understand and remember very short and simple instruction; the ability to carry out very short and simple instruction; the ability to maintain attention and concentration for extended periods;

the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; the ability to sustain an ordinary routine without special supervision; the ability to work in coordination with or proximity to others without being distracted by them; the ability to make simple work-related decisions; and the ability to complete a normal workday; and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 36-37). As to social interaction, the report indicates that Plaintiff is moderately limited in interacting appropriately with the public. (Tr. 37). As to adaptation, Plaintiff is moderately limited in responding appropriately to changes in the work setting. (Tr. 37). Dr. MacLean suggested that Plaintiff is "mentally retarded but could understand, remember, and perform simple tasks." (Tr. 38). He further noted that Plaintiff could make simple work related decisions, she could cope with changes in a simple work situation and could get along with others. (Tr. 38).

Dr. MacLean also performed a Psychiatric Review on Plaintiff on June 17, 1997. (Tr. 40-48). Dr. MacLen noted that "there are no marked restrictions of daily functioning." (Tr. 41). Dr. MacLean found that Plaintiff exhibited signs of subaverage general intellectual functioning based on her IQ scores. (Tr. 44). As to the severity of Plaintiff's impairments, Dr. MacLean found only a slight degree of limitation in Plaintiff's daily living activities. (Tr. 47). The assessment indicated that Plaintiff presented no evidence of organic mental disorders, schizophrenia, paranoia or other psychotic disorders, affective disorders, anxiety related disorders, somatoform disorders or personality disorders. (Tr. 42-45).

## IV. STANDARD OF REVIEW

The court may affirm, modify, or reverse the ALJ's decision outright, or remand the proceeding for rehearing or hearing of additional evidence. 42 U.S.C. § 405(g). Review by the court, however is not *de novo*; the court "may not decide the facts anew, reweigh the evidence or substitute its own judgment for that of the ALJ." *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir. 1987) (citation omitted); *see also Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). The duties to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide the case accordingly are entrusted to the commissioner; "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or the Commissioner's delegate the ALJ)." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971), *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987). If the Commissioner's decision is supported by substantial evidence, it is conclusive and this court must affirm. 42 U.S.C. § 405(g); *see also Arbogast v. Bowen*, 860 F.2d 1400, 1403 (7th Cir. 1988). "Substantial evidence" is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The Seventh Circuit demands even greater deference to the ALJ's evidentiary determinations. So long as the ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability," the determination must stand on review. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). Minimal articulation means that an ALJ must provide an opinion that enables a reviewing court to trace the path of his reasoning. *Walker v. Bowen*, 834 F.2d 635, 643 (7th Cir. 1987), *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985). Where a witness credibility determination is based upon the ALJ's subjective observation of the witness, the determination may only be disturbed if it is "patently wrong" or if it finds no support in the

7

record. *Kelley v. Sullivan*, 890 F.2d 961, 965 (7th cir. 1989), *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989). "However, when such determinations rest on objective factors of fundamental implausibilities rather than subjective considerations, [reviewing] courts have greater freedom to review the ALJ decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994), *Yousif v. Chater*, 901 F.Supp. 1377, 1384 (N.D.Ill. 1995).

## V. **FRAMEWORK FOR DECISION**

The ALJ concluded that Plaintiff did not meet the Act's definition of "disabled," and accordingly denied her application for benefits. "Disabled" is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(3)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(3)(C). *See Clark v. Sullivan*, 891 F.2d 175, 177 (7th Cir. 1988).

The Commissioner proceeds through as many as five steps in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f) (1998).[1] The Commissioner sequentially determines the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or is medically equivalent to an impairment in the

---

[1] The Commissioner has promulgated parallel regulations governing disability determinations under Title II and Title XVI. See 20 C.F.R. Ch. III, Parts 404, 416. For syntactic simplicity, future references to Part 416 of the regulations will be omitted where they are identical to Part 404.

8

Commissioner's Listing of Impairments; (4) whether the claimant is capable of performing work which the claimant performed in the past; and (5) whether the claimant is capable of performing any other work in the national economy.

At Step One, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520 (a),(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties that are done, or intended to be done, for pay or profit. 20 C.F.R. § 404.1510. If the claimant is engaged in substantial gainful activity, he is found not disabled, regardless of medical condition, age, education, or work experience, and the inquiry ends; if not, the inquiry proceeds to Step Two.

Step Two requires a determination whether the claimant is suffering from a severe impairment.[2] A severe impairment is one which significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The claimant's age, education, and work experience are not considered in making a Step Two severity determination. 20 C.F.R. § 404.1520(c). If the claimant suffers from severe impairment, then the inquiry moves on to Step Three; if not, then the claimant is found to be not disabled, and the inquiry ends.

At Step Three, the claimant's impairment is compared to those listed in 20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1. The listings describe, for each of the major body systems, impairments which are considered severe enough *per se* to prevent a person from doing any significant gainful activity. 20 C.F.R. §§ 404.1525(a). The listings streamline the decision

---

[2]The claimant need not specify a single disabling impairment, as the Commissioner will consider the combined affect of multiple impairments. See, e.g., 20 C.F.R. § 404.1520(c). For syntactic simplicity, however, this generic discussion of the Commissioner's decision-making process will use the singular "impairment" to include both singular and multiple impairments.

process by identifying certain disabled claimants without need to continue the inquiry. *Bowen v. New York*, 476 U.S. 467 (1986). Accordingly, if the claimant's impairment meets or is medically equivalent to one in the listings, then the claimant is found to be disabled, and the inquiry ends; if not, the inquiry moves on to Step Four.

At Step Four, the Commissioner determines whether the claimant's residual functional capacity allows the claimant to return to past relevant work. Residual functional capacity is a measure of the abilities which the claimant retains despite his impairment. 20 C.F.R. § 404.1545(a). Although medical opinions bear strongly upon the determination of residual functional capacity, they are not conclusive; the determination is left to the Commissioner, who must resolve any discrepancies in the evidence and base a decision upon the record as a whole. 20 C.F.R. § 404.1527(e)(2); *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). Past relevant work is work previously performed by the claimant that constituted substantial gainful activity and satisfied certain durational and recency requirements. 20 C.F.R. § 404.1465; Social Security Ruling 82-62. If the claimant's residual functional capacity allows him to return to past relevant work, then he is found not disabled; if he is not so able, the inquiry proceeds to Step Five.

At Step Five, the Commissioner must establish that the claimant's residual functional capacity allows the claimant to engage in work found in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(f), 404.1566. The Commissioner may carry this burden by relying upon vocational expert testimony, or by showing that a claimant's residual functional capacity, age, education, and work experience coincide exactly with a rule in the Medical-Vocational Guidelines (the "grids"). *See* 20 C.F.R. Ch. III, Part 404 Subpart P, Appendix 2; *Walker v. Bowen*, 834 F.2d 635, 640 ( 7th Cir. 1987); Social Security Law and Practice, Volume

3, § 43:1. If the ALJ correctly relies on the grids, vocational expert evidence is unnecessary. *Luna v. Shalala,* 22 F.3d 687, 691-92 (7th Cir. 1994). If the Commissioner establishes that sufficient work exists in the national economy that the claimant is qualified and able to perform, then the claimant will be found not disabled; if not, the claimant will be found to be disabled.

6. **ANALYSIS**

The court will proceed through the five step analysis in order.

A. Step One: Is the claimant currently engaged in substantial gainful activity?

In performing the Step One Analysis the ALJ found that Plaintiff had not engaged in any substantial gainful activity at any time relevant to his decision. (Tr. 13).

Under ordinary circumstances, a claimant is engaged in substantial gainful activity if the claimant's earnings averaged more than seven hundred and forty dollars per month for years after January 1, 2001. (20 C.F.R. § 1574 (b) (2) Table 1, as modified by 65 FR 82905, December 29, 2000).

The finding of the ALJ as to Step One of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step One of the Analysis is affirmed.

B. Step Two: Does the claimant suffer from a severe impairment?

In performing the Step Two Analysis the ALJ found Plaintiff suffered from severe impairments. Specifically, the ALJ found Plaintiff suffered from borderline intellect with a learning disability. (Tr. 15). The ALJ noted that Plaintiff's impairments had more than a minimal effect on her ability to function and, therefore, found Plaintiff to have severe impairments. (Tr. 11-13).

Substantial evidence exists to support the ALJ's determination that Plaintiff suffers from

severe impairments. This finding is not challenged by either party and the court finds no reason to disturb it. The ALJ's finding as to Step Two of the Analysis is affirmed.

    C.    Step Three: Does claimant's impairment meet or medically equal to an impairment in the Commissioner's listing of impairments?

In performing the analysis for Step Three the ALJ determined that Plaintiff's impairments do not meet or equal any impairment in Appendix 1 to Subpart P of Regulations number 4. (Tr. 15). The ALJ found that while Plaintiff's impairments had more than a minimal impact on her functioning and are therefore severe, they do not meet or equal the level of severity required by the listing. (Tr. 15). The ALJ noted that "Plaintiff was previously diagnosed as having mild mental retardation", however, the ALJ found Plaintiff to have the mental residual functional capacity to perform the basic mental demands of unskilled work activity. (Tr. 13). The ALJ also noted Plaintiff had no physical impairment and thus, her exertional residual functional capacity was presumed to be unlimited. (Tr. 13).

Plaintiff contends that the ALJ's final decision was not in accordance with the law. Plaintiff cites the Eligibility Redetermination Law. See. 20 C.F.R. Section 416.987; Pub. L. No. 104-193, Section 2212(b). Because the law does not require the Commissioner to apply the medical improvement standard in redetermination cases for children attaining the age of 18 years-old, Plaintiff argues that the ALJ's comments about Plaintiff's medical improvements signify that the ALJ did not adhere to the Social Security Act. This Court finds Plaintiff's argument to be without merit. The law, which Plaintiff cites to, specifically states that the Commissioner shall redetermine such eligibility during the 1-year period beginning on the individual's 18th birthday; and apply the criteria used in determining the initial eligibility for applicants who are age 18 or older. See, Pub.

L. No. 104-193, Section 2212(b). The ALJ's decision in this case included a step-by-step adult analysis which was comprehensible and easy to follow. The ALJ's evaluation included a detailed assessment of why he determined Plaintiff was no longer eligible for disability benefits as of June 1, 1997. (Tr. 12). As pointed out by the Plaintiff, the ALJ did make a few remarks regarding Plaintiff's medical improvement and the lack of medical evidence to support otherwise; however, the ALJ's decision is grounded in the proper application of the appropriate legal standards.

Plaintiff further contends that Plaintiff meets the requirements under Section 12.05D of the Listing of Impairments and that the ALJ failed to evaluate the Plaintiff's disability under that section. Section 12.05D provides that a claimant with mental retardation must show a valid verbal, performance, or full scale I.Q. of 60 through 70 resulting in two marked limitations listed in the categories. See, 20 C.F.R. Pt. 404, Subpart P, App1, 12.05 D. Plaintiff argues that because Plaintiff's Performance score was 68, Plaintiff is disabled under section 12.05D. However, after full review of the ALJ's decision and the evidence, this Court finds the ALJ's decision to be proper.

Although on May 28, 1997, Plaintiff's Performance I.Q. was 68, the ALJ found that Plaintiff's impairments did not result in marked limitations in any of the following categories: daily living activities, maintaining social functioning or concentration, persistence or pace, or repeated episodes of decompensation as required by Section 12.05D. (Tr. 13, 15). The ALJ noted that Plaintiff has the ability on a sustained and continuous basis to understand, remember, and carry out simple instructions. (Tr. 13). The ALJ indicated that Plaintiff has the ability to deal with others and tolerate routine work pressures. (Tr. 13). The ALJ noted that Plaintiff could relate well to others, take care of her own son, pay her bill bills in cash and is neat and appropriately groomed. (Tr. 13). The ALJ further noted that although she was diagnosed as having "mild mental retardation", the

13

ALJ determined that Plaintiff had no adaptive deficits during her developmental period. (Tr. 13). Moreover, Plaintiff's most recent mental RFC indicated that plaintiff had no significant limitations in understanding and memory with the exception of moderate limitation in the ability to understand and remember detailed instruction. (Tr. 55). The ALJ specifically stated Plaintiff's impairments "do not meet or medically equal any listing in the childhood or adult listing" and the ALJ also noted that "there is no medical evidence to establish physical or mental conditions which result in an impairment which meets, equal or functionally equal any impairment listed in Appendix 1." (Tr. 12, 13)

Substantial evidence exists to support the ALJ's finding and the court finds no reason to disturb it. Therefore, the ALJ's determination as to Step Three of the Analysis is affirmed.

D. Step Four: Is the claimant capable of performing work which the claimant performed in the past?

The ALJ determined that Plaintiff had not engaged in any substantial gainful activity in the past and therefore did not have any past relevant work. Because the Plaintiff had not engaged in substantial gainful activity at any time, the finding of the ALJ as to Step Four of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Four of the Analysis is affirmed. (Tr. 14).

E. Step Five: Is the claimant capable of performing any work existing in substantial numbers in the national economy?

At Step Five the ALJ determined Plaintiff has no physical impairment, thus the ALJ found Plaintiff to have an unlimited exertional residual capacity limited only by the mental residual functional capacity to perform the mental demands of unskilled work activity . (Tr. 13).

14

In determining a Mental RFC, the first step in the procedure is to assess the nature and extent of the claimant's mental limitations and restrictions (20 C.F.R. § 416.945 (c)). This information is then used to determine the Mental RFC. In order to properly assess an individual's level of functioning due to a mental disorder, evaluation of the impairment must take into account the severity of the impairment over a period of time.(20 C.F.R. Ch. III, Part 404, Subpart P, Appendix 1 12.00 (d)). This information is then used to complete claimant's vocational assessment.

Plaintiff's most recent mental RFC was performed on September 17, 1997. Although the report indicates that Plaintiff did have some moderate limitations to carry out detailed instructions and maintain attention and concentration for extended periods, Plaintiff had no significant limitations in the ability to understand and remember or in sustaining concentration and persistence. (Tr. 55-56). Dr. Heinrich found that Plaintiff was "currently functioning mentally at a borderline level" but that her "basic adaptive behavior is intact." (Tr. 57). He further suggested that Plaintiff needed a routine and repetitive work setting without frequent changes in routine. (Tr. 57). The ALJ noted that because Plaintiff has no physical impairments, her exertional residual functional capacity is unlimited. (Tr. 13). The ALJ found Plaintiff to have the mental residual functional capacity to perform the basic mental demands of unskilled work activity. (Tr. 13).

Finally, the vocational expert indicated that there are 32,000 available GED 111 jobs which were classified at simple 1, 2 step jobs. (Tr. 14). After taking the mental RFC into consideration and consulting a vocational expert, the ALJ found that Plaintiff is functionally capable of performing a significant number of jobs in the national economy. (Tr. 15). The finding of the ALJ as to Step Five of the Analysis is not challenged by either party and the court finds no reason to disturb this finding. The ALJ's determination as to Step Five of the Analysis is affirmed.

15

## VII. CONCLUSION

For the above reasons this Court grants Defendant's Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment is denied.

**ENTER:**

_____
P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

Date: 8/9/01